IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JAMES CUDD, SR., | Cause No. CV 17-108-BLG-SPW-TJC |
| Petitioner, | |
| vs. | ORDER |
| STATE OF MONTANA, ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondent. | |

This matter comes before the Court on an application by Petitioner James Cudd for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 of the Antiterrorism and Effective Death Penalty Act (AEDPA).  Because the Court was unable to discern exactly what claims Cudd was attempting to advance, he was directed to file an Amended Petition.[1]  Cudd complied.[2]

Following a review of the Amended Petition, the Court noted it appeared that Cudd's petition faced procedural hurdles; he was directed to respond to the issue of procedural default.[3]  After being provided several filing extensions due to

---

[1] (Doc. 5.)
[2] (Doc. 6.)
[3] See, (Doc. 7.)

ongoing medical issues surrounding his vision impairment,[4] Cudd was appointed counsel.[5]  Counsel filed a Second Amended Petition.[6]

In his Second Amended Petition, Cudd claims: (1) trial counsel was ineffective for failing to interview or call several witnesses to testify at his trial; (2) trial counsel was ineffective for failing to object to a member of the audience coaching witness D.F. during her testimony; (3) trial counsel was ineffective for failing to give an opening statement; (4) appellate counsel was ineffective for failing to challenge the admission of hearsay testimony; and, (5) the prosecutor engaged in misconduct when asking a witness to read from his psychosexual evaluation during her testimony.[7]  Respondents filed their Answer, arguing first that Cudd had failed to exhaust Claims 2-5 and a portion of claim 1 and, accordingly, these claims are procedurally barred from review.[8]  As to the portion Claim 1 that was not defaulted, Respondents assert Cudd failed to meet his burden of establishing that the Montana Supreme Court's review of the claim was "contrary to" clearly established law or an "unreasonable application" of that law.[9]  Respondents also believe Cudd's claims lack merit.[10]

---

[4] See, (Docs. 9, 11, and 13,)
[5] (Doc. 23.)
[6] See, (Doc. 27.)
[7] See generally, *Id*. at 17-29.
[8] See generally, (Doc. 35 at 12-13, 35-51, 74.)
[9] *Id*. at 74-86 (citations omitted).
[10] *Id*. at 52-90.

Cudd concedes the procedural default of his claims,[11] but argues that his poor health and eyesight prevented him from properly preparing his postconviction appeal and, thus, constitutes "cause" to excuse the procedural default.[12]  Cudd also argues the default of Claims 1-3, alleging the ineffective assistance of trial counsel, can be excused via the application of *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013).[13]

Both parties consented to proceed before the undersigned for all purposes. See, 28 U.S.C. § 636( c).[14]  For the reasons set forth herein, that portion of Cudd's ineffective assistance of counsel claim relative to failure to interview Josebele Kenny and Vivian Hall is denied because it does not survive deferential review under §2254(d), and the remaining claims are dismissed as procedurally defaulted without excuse.

## I.    Background

The procedural history of this matter has been set forth at length in prior orders of the Court; the facts pertinent to this Court's present analysis are included in this section.  Further facts will be included below where necessary.

Cudd was charged in Montana's Twenty-Second Judicial District, Big Horn

---

[11] See, (Doc. 27 at 11-12.)
[12] *Id*. at 13-16; see also, (Doc. 38 at 3-4).
[13] (Doc. 27 at 16-17); see also, (Doc. 38 at 4-8.)
[14] See also, (Doc. 40-1.)

County, with Incest and Sexual Intercourse without Consent. Cudd was initially represented by Nancy Schwartz, but Robert Kelleher, Jr. assumed representation and served as Cudd's trial counsel.[15] Prior to trial, the Incest charge was dismissed.[16] Following a jury trial in 2012, Cudd was convicted of Sexual Intercourse without Consent. Cudd received a prison sentence of seventy years with a twenty-year parole restriction.[17]

### i.    Direct Appeal

The Montana Supreme Court granted Cudd leave to file an out-of-time appeal.[18] Cudd was represented by Greg Hood on appeal. Cudd raised a single issue, arguing that the trial court abused its discretion when it denied his challenge for cause of a juror whose daughter had been the victim of sexual abuse. *State v. Cudd*, 2014 MT 140, 375 Mont. 215, 326 P. 3d 417 (*Cudd I*). In affirming the conviction, the Montana Supreme Court determined the lower court acted within its discretion in denying Cudd's challenge for cause. *Cudd*, 2014 MT at ¶15.

### ii.    Postconviction Petition

Cudd then filed a petition for postconviction relief (PCR) in the trial court

---

[15] See e.g. (Docs. 35-9 & 35-10.)

[16] The defense filed a motion to dismiss, challenging Cudd's relationship to the victim, D.F. In response, the State filed an Amended Information dismissing the Incest count. See e.g., Mot. To Dismiss (Doc. 35-8); Amd. Info. (Doc. 35-16.)

[17] See, Judg. (Doc. 35-17 at 1-2.)

[18] See, *State v. Cudd*, DA 13-0141, Or. (March 12, 2013).

with affidavits and memoranda in support.[19]  Cudd was granted leave to file an

Amended Petition and several "addendums" to his petition, in addition to a

statement from his girlfriend April Zier.[20]  The State filed responses to Cudd's

original and amended petitions.[21]

In his postconviction proceedings, Cudd raised four general claims: (1)

prosecutorial misconduct; (2) lack of a unanimous verdict; (3) ineffective

assistance of trial counsel (IAC); and (4) ineffective assistance of appellate counsel

(IAAC).  In relation to his first two claims, the district court found that the claims

were record-based and should have been raised on direct appeal.[22] To the extent

that the issues were not properly preserved for appeal, Cudd's only avenue to raise

them was via an ineffective assistance of counsel claim.  Accordingly, the claims

were procedurally barred and could not be considered in postconviction.  *Id*.

Cudd's IAC claim contained several sub-parts.  First, Cudd argued that

Schwartz and Kelleher each failed to interview potential witnesses, failed to

provide Cudd with discovery, and both performed an inadequate pre-trial

investigation.  Specifically, Cudd claimed Schwartz and Kelleher failed to

interview: Ricky Wright, Donnie Wright, Molly Huggs, Andrea Stewart, Josebele

---

[19] See, (Docs. 35-24, 35-25, and 35-26).
[20] See, (Docs. 35-30 and 35-33.)
[21] (Docs 35-28 & 35-32.)
[22]  (Doc. 35-34 at 3.)

Kenny, and Vivian Hall.[23]  The district court found that Cudd did not indicate what evidence counsel would have obtained had a more thorough investigation been performed.[24]  Likewise, Cudd did not explain whether the evidence would have been admissible at trial or whether the missing evidence prejudiced his case.[25]  As to this portion of the claim, the district court found Cudd failed to state a claim for relief.[26]

Cudd next argued that Kelleher was ineffective for failing to give an opening statement.  Because Cudd failed to explain how this failure prejudiced him or that the decision was objectively unreasonable, the district declined to disturb the trial tactics of counsel and denied relief.[27]

Cudd then claimed that while on the witness stand, the victim, D.F., was being "coached" by a member of the audience.  Cudd states he told Kelleher what he saw, but Kelleher failed to make an objection.  Cudd supported this claim with the statement from Zier, who was also in the audience and related that she saw someone coaching D.F.  The district court noted that Kelleher was not involved in the postconviction proceedings and, accordingly, there was no way to tell whether

---

[23] (Doc. 35-30 at 20, 26.)
[24] (Doc. 35-34 at 5.)
[25] *Id.*
[26] *Id*.
[27] *Id*.

or not he would agree that Cudd alerted him to the purported coaching.[28]  The

district court also noted there would have been a basis, as a matter of strategy, not

to object to the alleged coaching.[29]  Nevertheless, even assuming the failure

constituted deficient performance under the first *Strickland* prong,[30] the district

court found Cudd failed to indicate how such failure prejudiced his defense.[31]

Because Cudd did not affirmatively prove prejudice, this claim also failed.[32]

Cudd next asserted Kelleher performed ineffectively by failing to object

when the prosecutor referred to Cudd as D.F.'s "stepfather" and inserted his own

opinions regarding witness credibility into his closing argument.  The district court

determined the prosecutor's statements did not prejudice Cudd's constitutional

rights; therefore, Kelleher was not ineffective for failing to object.[33]  First, the

court noted there was one instance in the record when the prosecutor referred to

Cudd as D.F.'s stepparent, but Kelleher also referred to Cudd as D.F.'s

stepfather.[34]  Moreover, such reference did not prejudice the entire trial as there

was extensive evidence presented regarding Cudd and D.F. which made their

---

[28] *Id*. at 6.

[29] *Id*.

[30] Establishing ineffective assistance of trial counsel requires petitioner to make a two-part showing: (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's performance prejudiced the defense.  See, *Strickland v. Washington*, 466 U.S. 668 (1984).

[31] (Doc. 35-34 at 6.)

[32] *Id*.

[33] *Id*. at 7.

[34] *Id*.

relationship clear.[35]  Likewise, the court held the prosecutor's statements during closing argument did not prejudice Cudd, and Kelleher did not provide ineffective assistance by electing not to object.[36]  The court noted that upon review of the entire closing argument, the prosecutor's statement that the victim's story was true, was made in relation to explaining that the victim's reaction was consistent with the reaction of an abused child.[37]  The two other references made to D.F. providing "true" testimony were made in conjunction with the prosecutor asserting D.F.'s statements were consistent.[38]  The court concluded the prosecutor neither invaded the province of the jury, nor committed prosecutorial misconduct and denied postconviction relief.[39]

Cudd next claimed that Kelleher failed to allow him to testify on his own behalf.  The court noted Cudd did not explain what testimony he would have given or how his lack of testimony prejudiced the case.  The court held the claim to be unsubstantiated and insufficient to support a finding of ineffective assistance.[40]

Cudd also claimed Kelleher provided ineffective assistance by failing to appeal his conviction.  But the court held that whether or not Cudd's claim was true, any violation was alleviated by virtue of the Montana Supreme Court

---

[35] *Id*.
[36] *Id*.
[37] *Id*. at 7-8.
[38] *Id*. at 8.
[39] *Id*.
[40] *Id*.

allowing Cudd to file an out of time appeal.[41]  Cudd filed a direct appeal and was

represented by counsel on appeal; thus, even if trial counsel did provide him

unreasonable assistance, he could not demonstrate prejudice.[42]

In relation to appellate counsel, Cudd claimed Hood provided ineffective

assistance for failing to appeal the sufficiency of the evidence and failing to

challenge the trial court's decision to give an *Allen* instruction.[43]  The district court

determined Cudd failed to set forth any legal or factual support for these claims –

he did not attempt to explain how his appellate counsel's failure to raise the claims

prejudiced his appeal.  The court found Cudd's bare allegations to be meritless.[44]

Cudd also claimed Hood was ineffective for failing to present an issue on appeal

relative to prosecutorial misconduct.  The court looked to the specific prosecutorial

misconduct claims Cudd presented, and determined that none of the statements

with which Cudd took issue were objected to during the course of trial.[45]  These

statements included: (1) the prosecutor improperly referring to Cudd as D.F.'s

stepparent during opening statement; (2) the prosecutor improperly injecting his

own opinion regarding witness credibility; (3) the prosecutor misstating the

---

[41] *Id.*

[42] *Id.* at 8-9.

[43] An *Allen*-instruction is a supplemental instruction a trial court may give to a deadlocked jury which encourages further deliberation. *See, e.g., Allen v. United States*, 164 U.S. 492, 501-02 (1896); see also, *State v. Santiago*, 415 P.3d 972, 974 (Mont. 2018).

[44] *Id.* at 9.

[45] *Id.* at 10.

testimony of James Cudd, Jr., during his questioning of Samantha Kitzenberg; and (4) the prosecutor going beyond the scope of direct examination in attempting to discredit defense witness Samantha Goldberg.[46]  But none of these claims were preserved for appeal.  Because the issues were not preserved, appellate counsel was not ineffective for failing to raise them.  Postconviction relief was denied.[47]

### iii.    Postconviction Appeal

Cudd filed a timely notice appeal from the trial court's denial of his postconviction petition.  Cudd sought an extension of time to file his brief on appeal on October 21, 2016.[48]  Cudd then filed his opening brief on December 27, 2016.[49]  The appeal was accompanied by two affidavits from Cudd.[50]  Cudd's appeal was limited to a portion of his original ineffective assistance of counsel claim.  He argued trial counsel failed to adequately interview and/or depose witnesses that would have been favorable to the defense.[51]  Cudd claimed this failure, in turn, resulted in cumulative error and violated his right to due process and confrontation.[52]  Cudd believed these defense witnesses could have provided

---

[46] *Id*.
[47] *Id*.
[48] (Doc. 35-35).
[49] (Doc. 35-36.)
[50] *Id*. at 4-7.
[51] On appeal, Cudd listed the potential witnesses as: "Vivian Hall, Step-Daughter to Petitioner; Jean Cudd, spouse of Petitioner since 1996; Tammy Big Man, Friend of Petitioner; Bobbi Farmer, Mother to alleged victim; Ricky White (And Spouse); Josebele Kenny, Neighbour to Petitioner; and, Robert Farmer."  See, (Doc. 35-36 at 2.)
[52] *Id*. at 1-2.

exculpatory evidence.[53]

The Montana Supreme Court noted that Cudd's due process and confrontation clause claims were raised for the first time on appeal. Because he failed to present them in earlier proceedings, the Court declined to consider them. *Cudd v. State*, 2017 MT 121N, Or. at ⁋7 (Mont. May 23, 2017) (*Cudd II*). Additionally, Cudd did not raise other issues that were contained in his postconviction petition; therefore, the Court deemed those issues waived. *Id.* at ⁋6. The Court also stated it would not consider new facts on appeal that were not contained within the district court record. *Id.* at ⁋7.

Relative to his failure to interview claim, the Court noted the claim was not based on specific facts, but rather on Cudd's own conjecture. Cudd failed to show that specific information would have been obtained by the purported interviews, if the information would have been admissible at trial, and what prejudice he suffered by not having the information. *Id.* at ⁋13. Because Cudd failed to make a prima-facie showing that he was entitled to relief based upon counsel's failure to conduct the interviews, the district court's finding that Cudd did not establish a valid postconviction claim was affirmed. *Id.*

## II.    Analysis

In his Second Amended Petition before this Court, Cudd advances the

---

[53] *Id.* at 2.

following claims: (1) trial counsel was ineffective for failing to interview or call several witnesses to testify at trial; (2) trial counsel was ineffective for failing to object to a member of the audience coaching witness D.F. during her testimony; (3) trial counsel was ineffective for failing to give an opening statement; (4) appellate counsel was ineffective for failing to challenge the admission of hearsay testimony elicited through Samantha Kitzenberg; and, (5) the prosecutor engaged in misconduct in asking Samantha Goldsmith to read from Cudd's psychosexual evaluation during her testimony.

In relation to Claim 1, Cudd now contends trial counsel should have interviewed: Josebele Kenny, Vivian Hall, Jean Cudd, Tammy Big Man, and Bobbi Farmer.  Cudd notes, however, that only Josebele Kenny and Vivian Hall were presented as potential witnesses in both his PCR petition and his PCR appeal. Thus, Cudd acknowledges that in relation to the latter three witnesses, the claim is defaulted, but he argues he should be allowed to proceed under *Martinez*.[54] Although claims 2 and 3 were presented in Cudd's initial PCR petition, he did not pursue them on appeal.  Claims 4 and 5 were never presented in any fashion to the state courts.  As set forth above, the parties do not dispute that, aside from the portion of Claim 1 relating to witnesses Kenny and Hall, the remainder of Cudd's

---

[54] See, (Doc. 27 at 18, f.n.7.)

claims are procedurally defaulted.

### A. Procedural Default: Claims 2-5 and Claim 1- relating to witnesses J. Cudd, Big Man, and Farmer

Before a state prisoner may present a claim to a federal court, he must first exhaust his available state remedies.  28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted.  *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).  A federal court may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate cause for his noncompliance and actual prejudice, or establish that a miscarriage of justice would result from the lack of review.  See*, Schlup v. Delo*, 513 U.S. 298, 321 (1995).  Cudd does not argue that "a constitutional violation has probably resulted in the conviction of one who is actually innocent," *Schlup*, 513 U.S. at 327; *Murray v. Carrier,* 477 U.S. 478, 496 (1986); rather, he asserts adequate cause and prejudice exist to excuse the default of his claims.

13

###### i.    Traditional Cause/Prejudice Application

Ordinarily, "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). The cause standard will be met, for example, where the claim rests upon a new legal or factual basis that was unavailable at the time of direct appeal, or where "interference by officials" may have prevented the claim from being brought earlier. *Carrier*, 477 U.S. at 488. "A habeas petitioner demonstrates prejudice by establishing that the constitutional errors 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Schneider v. McDaniel*, 674 F.3d 1144, 1153 (9th Cir. 2012) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982). A petitioner has the burden of proving both cause and prejudice. *Coleman*, 501 U.S. at 750. The Court is not required to examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, at 1123 n.10 (9th Cir. 1991).

Cudd asserts that his default should be excused due to his poor health and eyesight issues.[55] In support of his contention, Cudd notes that he informed the Montana Supreme Court in his opening brief that he was suffering from a serious

---

[55] See, (Doc. 27 at 13); see also, (Doc. 38 at 4.)

eye condition that rendered him all but blind.[56]  Cudd references medical records that indicate his cornea was perforated in December of 2016, leaving him without use of his right eye.[57]  Cudd also explains that his left eye suffers from severe dry eye secondary to rheumatoid arthritis, and that his vision issues have been exacerbated due to his arthritis and the result of Hepatitis C.[58]

Cudd candidly concedes that he has been unable to find a case where a court has excused a procedural default due to vision or health problems, but argues the condition is similar to a mental health issue.[59]  Cudd also concedes that the majority of courts have declined to excuse a default due to a mental health issue, because it is not something that is "external" to the defense.  But he points out that the Eighth Circuit has made such an application.[60]  Cudd cites to *Holt v. Bowersox* for the proposition that "in order for mental illness to constitute cause and prejudice to excuse procedural default, there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he

---

[56] Specifically Cudd advised the Montana Supreme Court: "Petitioner is suffering from a serious eye condition that precludes the use of His eyes (render Him all-but-blind) and therefore begs leave of the court to alter and amend this Petition over the course of time that vision is not occluded beyond sight."  (Doc. 35-36 at 1); see also, *id*. at 4, wherein Cudd notes that he has an eye condition leaving him largely unable to see and often unable to read, write, or type.

[57] (Doc. 27 at 13-14) (citing Doc. 21.)

[58] *Id.*

[59] *Id*. at 14.

[60] *Id*.

15

or she should have pursued post-conviction relief." *Holt*, 191 F. 3d 970, 974 (8th Cir. 1999).  Cudd acknowledges that the Ninth Circuit has not explicitly followed *Holt*, but it has recognized that "*Hughes*[61] and *Tacho*[62] do not necessarily foreclose the possibility that a pro se petitioner might demonstrate cause in a situation where a mental condition rendered the petitioner completely unable to comply with a state's procedures and he had no assistance." *Schneider v. McDaniel*, 674 F. 3d 1144, 1154 (9th Cir. 2012).  Cudd also points out that the opening brief he ultimately filed with the Montana Supreme Court was styled not as an appeal, but rather as a writ of habeas corpus.[63]  Cudd  believes this supports his contention that vision and health problems prevented him from properly litigating his claims in the state court.

Respondents argue that even if this Court were to extend the *Holt/Schneider* standard to Cudd's claimed vision impairment, the record fails to support a conclusive showing that his impaired vision was the cause for his failure to present all of his claims on postconviction appeal.[64]  Respondents note that Cudd has not made a conclusive showing of blindness during the time period his direct

---

[61] *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986)(finding that a pro se prisoner's illiteracy was not sufficient to satisfy the standard of an objective, external factor amounting to "cause" for purposes of avoiding the procedural bar on habeas claim).
[62] *Tacho v. Martinez*, 862 F.2d 1376 (9th Cir. 1988)(pro se petitioner's diagnosis as "borderline mental defective" and reliance upon incompetent "jailhouse lawyers" did not constitute cause to excuse the default of his claims).
[63] (Doc. 38 at 3); see also, (Doc. 35-36.)
[64] (Doc. 35 at 41.)

16

appeal was pending in 2016 and point out the term "legally blind" does not appear in his medical records until May of 2018.[65]  Respondents further assert that in his October 2016 request for a continuance, Cudd did not mention any vision issues, rather he stated he needed additional time to perform legal research because the library had been "gutted."[66]  In his opening brief, Cudd informed the Montana Supreme Court that he had been afflicted with an eye condition and might require additional time in the future, but he did not indicate that his condition prevented him from filing his opening brief on postconviction appeal.  Additionally, Cudd did not file a reply brief and did not seek additional time to do so.[67]  Moreover, Respondents note that Cudd had no difficulty filing his initial petition or amended petition in this Court.[68]  Accordingly, Respondents argue Cudd has failed to make a conclusive showing that his vision issues interfered with his ability to assert his claims on appeal to the Montana Supreme Court pursuant to the rule of *Holt* and *Schneider*.[69]

    In these proceedings, Cudd was ultimately appointed counsel due to multiple requests for continuances based upon his ongoing medical issues.  Nevertheless, this Court would agree that Cudd articulately presented his claims in his original

---

[65] *Id*. at 41-42.
[66] *Id*. at 42, citing (Doc. 35-35.)
[67] *Id*. at 42-43.
[68] *Id*.
[69] *Id*.

17

and amended petitions.  But that is not the focus of this Court' analysis.  The

relevant inquiry is what occurred during Cudd's appellate proceedings following

the denial of his state postconviction petition.

As a preliminary matter, the Court was unable to locate any case where

vision impairment was found to constitute adequate cause to excuse a procedural

default.[70]  This Court is also cognizant of the Supreme Court's warning that the

cause and prejudice standard, while being one of discretion and intended to be

flexible, yields only to exceptional circumstances.  See, *Hughes*, 800 F. 2d at 909,

citing *Engl*e, 456 U.S. at 135.  It is not clear that the facts surrounding Cudd's case

present such exceptional circumstances.  Further, the Court is not convinced that

the *Holt/Schneider* mental health standard is applicable to Cudd's case, which

deals solely with a physical impairment.  But assuming, for the sake of argument,

that this standard should apply, Cudd has failed to make the requisite showing.

The Court acknowledges that Cudd suffers from several serious health

conditions, not limited just to his vision impairment, as supported by the various

medical documents that have been filed in this matter.[71]  But the Court also agrees

with the Respondents that during the applicable time period of his state appellate

---

[70] See e.g., *Briggs v. Schriro*, 2006 WL 1794767, at *10-11 (D. Ariz. June 27, 2006)(petitioner failed to establish that his blindness constituted an objective external factor that prevented him from properly presenting his claims to the state courts); see also, *Santiago v. Miller*, 180 F. Supp. 2d 471, 474 (S.D.N.Y. 2001) (petitioner's legal blindness was not a sufficient reason to toll the limitations period because the condition did not truly prevent him from pursuing his legal rights).
[71] See e.g., (Doc. 21)(5/21/18 letter from Dr. Nedrud outlining Cudd's medical issues).

postconviction proceedings, Cudd has not made a conclusive showing that his vision was so impaired that he was unable to make rational decisions regarding his state proceedings.  See, *Holt*, 191 F. 3d at 974.

To the contrary, Cudd timely filed a notice of appeal from the denial of his postconviction petition.  On October 21, 2016, Cudd sought an extension of time to file his opening brief, not because he was having vision issues, but because the law library had been "gutted," and he needed more time to submit his "brief in support of his motion to appeal."[72]  It appears that during this same time period Cudd had already been working on his appellate strategy.  Attached to his opening brief is an affidavit that was prepared on October 7, 2016, indicating Cudd's intention to present new evidence to the appellate court.[73]

On December 19, 2016, Cudd first saw Dr. Nedrud for a corneal ulcer in his right eye that had perforated.[74]  On December 23, 2016, Dr. Nedrud glued the perforation.[75]  On December 27, 2016, Cudd filed his opening brief with the Montana Supreme Court, although the document is dated December 21, 2016.[76] Cudd advised the Supreme Court that an affliction of his eyes had left him largely unable to see, read, or write, and that he may need additional time in the appellate

---

[72] (Doc. 35-35 at 1.)
[73] See, (Doc. 35-36 at 5-7.)
[74] (Doc. 8-1 at 3-4.)
[75] *Id*. at 5-6.
[76] See, (Doc. 35-36.)

proceedings.[77]  On January 10 and 25, 2017, Cudd again saw Dr. Nedrud who glued the corneal perforation during both visits.[78]  At the latter visit, Cudd was advised that his treatment providers needed to get his rheumatoid arthritis and Hepatitis C under control so that a scar could form on his eye, and that further healing of the right eye would not occur while Cudd remained on prednisone.[79]  On February 1, 2017 , Dr. Nedrud performed a tarsorrhaphy.[80]  In a subsequent letter to the Court, Dr. Nedrud noted that the rheumatologic melt of the cornea and the resulting leak of fluid improved after this procedure.[81]  On February 21, 2017, the State filed its response brief in Cudd's appeal.[82]  Accordingly, Cudd would have had until Tuesday, March 7, 2017, to file his reply or a request for additional time.[83]  As set forth above, Cudd did not file a reply or request additional time.

But during this same time period it appears that Cudd was pursuing an action with the Montana Risk Management and Tort Defense Division in relation to a claim of medical neglect.[84]  The Court also notes that despite Cudd's contention

---

[77] *Id*. at 4.

[78] (Doc. 8-1 at 8-9; 10-11.)

[79] *Id*. at 10.

[80]  *Id*. at 12-13.  A tarsorrhaphy is a procedure in which eyelids are partially sewn together narrowing the eye opening.  See e.g. University of Michigan, Kellogg Eye Center: https://medicine.umich.edu/dept/ophthalmology/search (accessed February 15, 2021).

[81] (Doc. 21.)

[82] (Doc. 35-37.)

[83] See, M.R.App.Pro. 13(a) (noting an Appellant may serve and file a reply brief within 14 days after service of the brief of Appellee).

[84] See, (Doc. 8-1 at 2)(March 15, 2017 letter from Cudd referencing prior correspondence).

that prisoners were prohibited from obtaining legal assistance from others, it appears Cudd had someone helping him draft legal materials.[85]  Additionally, Cudd had some form of a companion civil matter pending in the Powell County District Court, as evidence by an April 2017 affidavit attached as an exhibit in these proceedings.[86]

The record before this Court demonstrates that despite Cudd's problems relating to his vision, he was able to comply with the state's procedures by timely filing his opening brief.  Moreover, Cudd's condition was stabilizing, if not improving, following the tarsorrhaphy on February 1, 2017.  Thereafter, it appears Cudd made a conscious decision not to participate further in his state appellate proceedings, despite having an adequate opportunity to do so.    Moreover, during this same time period, Cudd was able to initiate and participate in at least two other legal proceedings, potentially with assistance.  All of these factors defeat Cudd's claim that his vision difficulties rendered him *completely unable* to comply with Montana state procedures.  See, *Schneider*, 674 F. 3d at 1154 (emphasis added).  Or, put another way, Cudd cannot demonstrate the requisite cause.  Because Cudd has failed to meet his burden of showing cause, this Court will not examine prejudice.  *Engle*, 456 U.S. at 134.

ii.    **Application of *Martinez* to excuse default of Claims 1-3**

---

[85] *Id*. (noting his communication was written "by-proxy").
[86] See, (Doc. 8-1 at 1.)

A petitioner does not have a federal constitutional right to effective assistance of counsel during state postconviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987).  Accordingly, in *Coleman*, the Court held that attorney error committed in the course of postconviction proceedings cannot supply cause to excuse a default that occurs in course of those proceedings.  501 U.S. at 755.  In *Martinez v. Ryan*, however, the Supreme Court recognized a narrow exception to the *Coleman* rule, explaining:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-collateral review proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan*, 566 U.S. 1, 16-17 (2012).  The Supreme Court has described and clarified the *Martinez* cause-and-prejudice test as consisting of four necessary prongs: (1) the underlying IATC claim must be a "substantial" claim; (2) the "cause" for the procedural default consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" collateral review proceeding where the IATC claim could have been brought; and (4) state law requires that an IATC claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. *Trevino v. Thaler*, 569 U.S. 416, 423, 429 (2013).  The failure to meet any of these

four prongs means that the *Martinez* exception is unavailable to excuse the procedural default of a claim.  *Martinez* expressly does not excuse a procedural default that occurs in the appeal of a collateral state court proceeding.  566 U.S. at 16.  To establish cause, a petitioner may not rely on error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.*; see also, *Davila v. Davis*, __ U.S. __, 137 S. Ct. 2058, 2064 (2017).

Respondents assert that Cudd cannot meet his burden under prong two of *Martinez*, because Cudd was able to present all of his IAC claims to the district court in his postconviction proceedings.[87]  Respondents further argue Cudd cannot meet the first prong of the *Martinez* test because he has not demonstrated that his IAC claims are "substantial."[88]

Nevertheless, the Court finds that it is prong three of the *Martinez/Trevino* test that is fatal to Cudd; his default of the IAC claims did not occur in the "initial" collateral review proceedings, but rather on appeal therefrom.

Apparently anticipating such a finding, Cudd acknowledges that the Ninth Circuit has never held that *Martinez* applies to claims defaulted on postconviction appeal.  But he relies on an argument advanced by a petitioner in the Northern

---

[87] (Doc. 35 at 45.)
[88] *Id.*

District of Alabama in *Brown v. Giles* for the premise that this Court should make

such an application, because it is "incongruous to hold that no counsel or

ineffective assistance of counsel at the post conviction trial court level can

constitute cause but that no counsel or ineffective counsel at the post conviction

appeals level cannot constitute cause when the defendant is required to exhaust

claims all the way through a request for discretionary review."[89]  Cudd omits,

however, that the district court in *Brown* ultimately declined to make such a leap

and found that the procedural default could not be excused via application of

*Martinez*:

> Although the Magistrate Judge was not unsympathetic to Brown's argument,
> he concluded that the plain language of *Martinez* indicates that it does not
> extend "beyond the first occasion the State allows a prisoner to raise a claim
> of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1320; *see also
> Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("Arnold's multiple
> ineffective assistance claims were litigated in his initial-review collateral
> proceeding, but not preserved on appeal. Thus, unlike Martinez, Arnold has
> already had his day in court; deprivation of a second day does not constitute
> cause."). Accordingly, the Magistrate Judge found that petitioner has not
> established cause for his procedural default, and his claim is due to be
> denied.[90]

Brown's petition was dismissed.

Much like *Brown*, Cudd's cause-and-prejudice argument fails the third

prong of *Martinez*, because these claims were not defaulted in the initial post-

---

[89] (Doc. 27 at 16-17)(citing  *Brown v. Giles*, 2016 WL 880255, at *3 (N.D. Ala. Mar. 8, 2016)).
[90] *Brown v. Giles*, 2016 WL 880255, at *3 (N.D. Ala. Mar. 8, 2016)).  The Eleventh Circuit
denied a certificate of appealability.  See, *Brown v. Giles*, (11th Cir. 16-11474) (Sep 9, 2016).

conviction proceedings before the district court.  The rule of *Martinez* allows a court sitting in federal habeas to review an IAC claim "when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial collateral review proceeding."  *Martinez*, 566 U.S. at 14.[91]  As set forth above, Cudd asserted his IAC claims pro se in his initial postconviction proceedings, and the district court determined the claims lacked merit.  But the default of these claims occurred on appeal following the dismissal of Cudd's petition, when Cudd omitted the claims.  Because the exception of *Martinez* applies only to claims defaulted in the initial-review collateral proceedings, Cudd may not use, as cause to excuse the default, error that occurred in the "appeal[ ] from initial-review collateral proceedings."  *Id.* at 16.

Since Cudd has failed to establish cause, the Court need not consider whether he has shown actual prejudice resulting from the alleged constitutional violation.  *Smith v. Murray*, 477 U.S. 527, 533 (1986).  These claims will be dismissed.

## B. Deferential Review of Claim 1: regarding witnesses Kenny and Hall

In his remaining claim, Cudd contends trial counsel performed deficiently by

---

[91] To the extent that the Ninth Circuit has not yet recognized or applied this portion of the holding of *Martinez*, other circuit courts of appeal have done so.  See e.g., *Tocker v. Shinn*, 2020 WL 3052186, at *12 (D. Ariz. May 14, 2020), *report and recommendation adopted*, 2020 WL 3050701 (D. Ariz. June 8, 2020) (collecting cases).

failing to interview and/or call two witnesses:  fact witness, Josebele Kenny, and character witness, Vivian Hall.

Kenny apparently lived next door to Cudd during the time-period that D.F. was in foster care.  Cudd now asserts she could have testified that she and D.F. would visit Cudd and ask him to do or buy things for them, and that such testimony could have shown that D.F. was not afraid of Cudd.[92]

Hall is Cudd's stepdaughter and lives in Florida.  When she was younger, Hall was in a car accident that left her disabled for a period of time.  Cudd states she would have testified that Cudd took very good care of her and never hurt or sexually assaulted her.[93]

As set forth above, in his postconviction proceedings, the district court determined Cudd did not indicate exactly what testimonial evidence counsel would have obtained from these witnesses had a more thorough investigation been performed, nor did he explain if the purported evidence would have actually been admissible and, if so, how the missing evidence prejudiced his case.[94]  In short, the district court held Cudd failed to state a claim for relief.[95]  On appeal, the Montana Supreme Court found Cudd failed to make a prima facie showing of IAC, because

---

[92] See, (Doc. 27 at 18); see also, (Doc. 38 at 6.)
[93] See, (Doc. 27 at 18); see also, (Doc. 38 at 6.)
[94] (Doc. 35-34 at 5.)
[95] *Id.*

26

the claim was not supported by specific facts, but was based on Cudd's own conjecture. *Cudd II*, at ¶13. Cudd did not show what information would have been obtained from the witnesses, if the information would have been admissible, and the prejudice he suffered. *Id.* Accordingly, the Montana Supreme Court held the district court properly denied the claim. *Id.* This Court's consideration of the claim is constrained by the applicable standard of review.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal habeas court may not grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court," 28 U.S.C. § 2254(d), unless the claim's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by [this] Court," § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2); see also, *Johnson v. Williams*, 568 U.S. 289, 292 (2013). AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners, *Hurles v. Ryan*, 725 F. 3d 768, 777 (9th Cir. 2014), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards kick in." *Davis v Ayala*, 576 U.S. 257, 269 (2015) (citations omitted).

Cudd claims trial counsel provided ineffective assistance.  The clearly established federal law for ineffective assistance of counsel claims was determined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under the two-pronged framework of *Strickland*, the Sixth Amendment guarantee of the right to counsel in a criminal proceeding is violated if "counsel's performance was deficient" and "the deficient performance prejudiced the defense."  466 U.S. at 687.  Both prongs of the *Strickland* test must be satisfied to establish a constitutional violation; failure to satisfy either prong requires that an ineffective assistance claim be denied.  *Id.*, at 697 (no need to address deficiency of performance if prejudice is examined first and found lacking); *Rios v. Rocha*, 299 F. 3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.").

In assessing a claim that counsel's representation did not meet the constitutional minimum, the court is to "indulge in a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance."  *Id.* at 689.  Petitioner bears the burden of showing the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.  See, *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  Consequently, this Court's review of the state courts' determination that Cudd's counsel did not perform deficiently is "doubly" deferential.  *Strickland* requires state courts to give deference to choices made by

28

counsel, and AEDPA, in turn, requires this Court to defer to the determinations of state courts. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

While Cudd presents this Court with an overview of the testimony that he believes the two witness might have provided, he did not do the same in the state courts. Cudd states it is unknown why counsel failed to interview these witnesses, and that the state PCR court's failure to hold a hearing and inquire further of counsel resulted in an unreasonable determination of the facts under §2254(d)(2).[96] Cudd believes this issue is easily remedied by this Court holding an evidentiary hearing or ordering the deposition of trial counsel.[97] If this Court were reviewing the claim de novo, Cudd's suggestion might have merit. But at this juncture, the question before the Court is not whether counsel failed to seek out or present the testimony of Kenny or Hall, and whether counsel's failure to do so was deficient. Under § 2254(d), the proper inquiry is whether the state court's decision that counsel did not perform deficiently was reasonable.

The lack of information of which Cudd now complains, was not a result of the actions by the state district court. Rather, it was Cudd's own failure to put forth any information, i.e. – make a prima facie showing – that the potential

---

[96] See, (Doc. 38 at 7.)
[97] *Id.*

29

witness testimony would have aided his case.  "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."  *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  A petitioner may not use self-serving speculation to argue that a witness might have provided favorable testimony, but must adduce evidence to show what the witness's testimony would have been.  *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997); *see also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").  As explained by the state courts, Cudd only provided his conclusory beliefs about unknown testimony the witnesses might have provided.

Because Cudd did not even establish the existence of the evidence, much less its admissibility, he could not make the next showing: that counsel performed deficiently for failing to discover or present the evidence.  Thus, the state court's finding that Cudd failed to make prima facie showing of trial counsel's purported ineffective assistance, is supported by the record before this Court.  It follows then that the state courts' denial of Cudd's IAC claim was neither an unreasonable application of *Strickland* under §2254(d)(1), nor an unreasonable determination of

the facts under §2254(d)(2).  Accordingly, this Court must afford deference to the state court decision.

## C. Conclusion

Cudd's claim of ineffective assistance of counsel as it relates to witnesses Kenny and Hall does not survived deferential review under §2254(d).  As to the remainder of his procedurally defaulted claims, Cudd fails to establish the requisite cause to set aside the default.  He has not demonstrated that his impaired vision rendered him completely unable to comply with the state court appellate filing requirements.  Additionally, the exception of *Martinez/Trevino* is inapplicable to his defaulted IAC claims.  Accordingly, Cudd's claims will be denied and the petition will be dismissed.

## III.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254 Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Where a claim

31

is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Cudd has not made a substantial showing that he was deprived of a constitutional right.  A portion of his IAC claim does not survive the deferential standard of review.  Further, because the remaining claims are procedurally defaulted without excuse, reasonable jurists would find no basis to encourage further proceedings at this time.  There are no close questions and there is no reason to encourage further proceedings in this Court.  A certificate of appealability is denied.

Based on the foregoing, the Court enters the following:

## ORDER

1.  The Second Amended Petition (Doc. 27) is DISMISSED with prejudice.

2.  The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3.  A certificate of appealability is DENIED.

DATED this 16th day of March, 2021.

*/s/ Timothy J. Cavan*
Timothy J. Cavan
United States Magistrate Judge

32